# No. 23-3960

## In the United States Court of Appeals for the Ninth Circuit

**JOHN ANTHONY CASTRO,**

*Plaintiff - Appellant,*

***v.***

**ADRIAN FONTES, ARIZONA SECRETARY OF STATE; DONALD JOHN TRUMP,**

*Defendants - Appellees.*

APPEAL FORM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA, PHOENIX
ORIGINATING CIVIL CASE NO.: 2:23-CV-01865
Honorable Douglas Leroy Rayes, U.S. District Judge

_____

### APPELLANT'S OPENING BRIEF

_____

Respectfully submitted:

John Anthony Castro
Appellant
12 Park Place
Mansfield, TX  76063
Tel. (202) 594 - 4344

*Pro Se*

**JOHN ANTHONY CASTRO, APPELLANT,**                                    **NO.23-3960**
***v.***
**ARIZONA SECRETARY OF STATE ADRIAN FONTES**
*and* **DONALD JOHN TRUMP, APPELLEES**.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record hereby certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Castro, John Anthony, Appellant.

2. Arizona Secretary of State Adrian Fontes, Appellee.

3. Donald John Trump, Appellee.

4. Dennis Ira Wilenchik, Counsel for Appellee Donald John Trump.

5. John Douglas Wilenchik, Counsel for Appellee Donald John Trump.

6. Mark Meuser, Counsel for Appellee Donald John Trump.

7. Timothy Andrew LaSota, Counsel for Appellee Donald John Trump.

8. Kara Karlson, Counsel for Appellee Arizona Secretary of State.

9. Kyle Cummings, Counsel for Appellee Arizona Secretary of State.

10. Douglas L. Rayes, United States District Judge.

*/s/ John Anthony Castro*
John Anthony Castro

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ........................................................................................... i

TABLE OF CITATIONS ........................................................................................ iii

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD ........................ v

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...................................................................................................... 1

STATEMENT OF THE ISSUES ............................................................................. 2

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF THE ARGUMENT ...................................................................... 7

STANDARD OF REVIEW ..................................................................................... 8

ARGUMENT ........................................................................................................... 9

I.      THE RULING WAS BASED ON AN UNPRECEDENTED THEORY
        FOR DISGREARDING A PARTICULARIZED AND CONCRETE
        INJURY ...................................................................................................... 9

II.     THE "TIME OF FILING RULE" DOES NOT APPLY ............................. 18

III.    IRREPARABLE HARM WILL RESULT IF APPELLATE REVIEW IS
        DELAYED ................................................................................................. 19

CONCLUSION ....................................................................................................... 20

STATEMENT OF RELATED CASES .................................................................. 22

CERTIFICATE OF COMPLIANCE ..................................................................... 23

CERTIFICATE OF SERVICE .............................................................................. 24

# TABLE OF CITATIONS

## Cases

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................. 9, 12, 13

*Foman v. Davis,*
   371 U.S. 178 (1962) ..................................................................15

*Golden v. Zwickler,*
   394 U.S. 103 (1969) ..................................................................19

*Howey v. U.S.,*
   481 F.2d 1187 (9th Cir. 1973) ..................................................16

*In re Digimarc Corp. Derivative Litig.,*
   549 F.3d 1223 (9th Cir. 2008) ..................................................18

*Int'l Harvester Credit Corp. v. E. Coast Truck,*
   547 F.2d 888 (5th Cir. 1977) ....................................................16

*Kerin v. Titeflex Corp.,*
   770 F.3d 978 (1st Cir. 2014) ......................................................8

*Kerrigan's Est. v. Joseph E. Seagram & Sons,*
   199 F.2d 694 (3d Cir. 1952) ....................................................16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
   624 F.3d 1083 (9th Cir. 2010) ...............................................9, 10

*McCollester v. City of Keene,*
   668 F.2d 617 (1st Cir. 1982) ....................................................19

*Morongo Band of Mission Indians v. Rose,*
   893 F.2d 1074 (9th Cir. 1990) ..................................................17

*Strauss v. Douglas Aircraft Co.,*
   404 F.2d 1152 (2d Cir. 1968) ..................................................16

*Ulloa v. Guam Econ. Dev. Auth.*,
  580 F.2d 952 (9th Cir. 1978) .................................................................17

*U.S. v. Gonzalez, Inc.*,
  412 F.3d 1102 (9th Cir. 2005) ..................................................................8

*U.S. v. SCRAP*,
  412 U.S. 669 (1973) ...............................................................................14

*United States v. Sarkisian*,
  197 F.3d 966 (9th Cir.1999) ......................................................................8

*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of
  Am.*, 919 F.2d 1398 (9th Cir. 1990) .......................................................15

*Wyshak v. City Nat. Bank*,
  607 F.2d 824 (9th Cir. 1979) ...................................................................16

## Constitution and Statutes

U.S. Const. Art. III ........................................................................................2

U.S. Const. amend. XIV .................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1294 ...........................................................................................1

Ariz. Rev. Stat. § 16-242(B) .........................................................................4

**REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD**

Pursuant to Fed. R. App. P. 34(a)(2)(C), oral argument need not be heard because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

Jurisdiction for this civil action was proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1331 because Appellant John Anthony Castro's claim arose under Section 3 of the 14th Amendment to the United States Constitution.

The district court entered final judgment against Appellant as to all claims on December 5, 2023, on the basis he lacked standing for not being a "genuine" political competitor.  On December 5, 2023, Appellant filed a timely notice of appeal.

Jurisdiction in this Honorable Court of Appeals is proper under 28 U.S.C. §§ 1291 and 1294.

## STATEMENT OF THE ISSUES

1.    Does an Arizona ballot-placed Republican Presidential Candidate whose direct and current competition for votes evidenced by thousands of dollars in Arizona-specific campaign expenses for a billboard and yard signs lack Article III standing if a lower court determines that he is not genuinely completing despite a verified statement by the candidate that he intends to serve as the 47th President of the United States?

2.    Did the lower court abuse its discretion in denying Plaintiff's motion to amend his complaint to ensure all facts were properly before the lower court?

## STATEMENT OF THE CASE

Prior to September 5, 2023, Appellant incurred campaign expenses attributable to the targeting of voters in the state of Arizona, which included his Presidential campaign website that incurred hundreds of dollars in website hosting fees, the launching of a show called "The Truth Addict" that required thousands of dollars in equipment and productions costs, and cultivating a substantial and active following on multiple social media platforms that includes thousands of voters in Arizona, and Appellant raised several hundred dollars in campaign contributions from unknown and unrelated small donors throughout the United States, which Appellant made the lower court aware of in his November 1, 2023, affidavit.[1]

On September 5, 2023, Appellant John Anthony Castro filed a Verified Complaint for Declaratory and Injunctive Relief before the U.S. District Court for the District of Arizona[2] to challenge the constitutional eligibility of Appellee Donald John Trump for having provided aid and comfort to the insurrectionists that attacked the United States Capitol on January 6, 2021.

In said Verified Complaint, Appellant John Anthony Castro alleged that he was "directly and currently completing against Donald J. Trump for the Republican nomination for the Presidency of the United States."[3]

---

[1] *See* ECF 53.
[2] *See* ECF 1.
[3] *See* ECF 1 ¶ 19.

In the Verified Complaint's Verification Page, Appellant John Anthony Castro also stated "I intend to appear on the 2024 Republican primary ballot in this state."[4]  At the time of filing this case, Appellant John Anthony Castro was unable to file his ballot access documentation due to an arbitrary state law that sets the timeframe for filing between the 130th day before the primary and the 100th day before the primary, which, accounting for weekend and holidays, created a timeframe of November 13 through December 11.[5]  Appellant John Anthony Castro, a *pro se* litigant, determined that delaying filing the civil action until then risked the lower court being unable to enjoin the acceptance of Appellee Donald John Trump's ballot access documentation if Appellee Donald John Trump chose to file on the first day.

On September 25, 2023, the lower court held a video conference regarding the TRO.  After the conference, it was agreed that the TRO would be construed as a Motion for Preliminary Injunction with an Expedited Bench Trial on the Papers.

On October 2, 2023, Appellant John Anthony Castro was the first Republican to file his Nevada Declaration of Candidacy in-person at the Reno, Nevada, office of the Secretary of State.

---

[4] *See* ECF 1, Verification, Page 18 of 18, ¶ 2.
[5] *See* Ariz. Rev. Stat. § 16-242(B).

On October 11, 2023, Appellant John Anthony Castro was the first Republican to file his New Hampshire Declaration of Candidacy in-person at the Concord, New Hampshire, office of the Secretary of State and paid the $1,000 filing fee.

On November 14, 2023, Appellant John Anthony Castro was the first Republican to file this Arizona Declaration of Candidacy in-person at the Phoenix, Arizona, office of the Secretary of State.

On November 14, 2023, the same day, the lower court held an expedited trial and heard oral arguments. At that hearing, Appellant testified about his ground campaign activities including placing yard signs at many homes in Arizona as well as being the only candidate with a billboard in Phoenix. In fact, the lower court took implied judicial notice of Appellant John Anthony Castro's campaign yard signs placed on Calle Tuberia and Calle Jokake in Phoenix as evidenced in the transcript of the expedited trial.

On December 4, 2023, Appellant filed a Motion to Amend along with a full copy of his proposed First Amended Verified Complaint to comply with the *Time of Filing Rule* and ensure that all facts to-date, including Appellant's post-filing ballot placement, grassroots campaigning and placing of campaign yard signs in Arizona, and digital billboard in downtown Phoenix, were properly before the lower court. In the motion to amend, Appellant clarified his position that the Original Complaint

properly alleged direct and current competition with a later-filed affidavit providing more definitive statements to support that verified factual allegation in the Original Complaint; nevertheless, out of an abundance of caution given the First Circuit's decision that the *Time of Filing Rule* barred consideration of facts occurring after the filing of the complaint, Appellant wishes to amend the complaint to neutralize that risk.[6]  Appellant explained how neither side had argued the *Time of Filing Rule* either in New Hampshire or Arizona, all sides briefed their positions under the presumption those facts were properly before the Court, and since there were no new claims being added, there would be no prejudice to any party for the amendment that was operating more as a formality to avoid undue delay.

On December 5, 2023, the lower court denied the motion to amend and granted Appellee Donald John Trump's motion to dismiss for lack of subject matter jurisdiction on the basis that Appellant John Anthony Castro, although a ballot-placed candidate with thousands of dollars in Arizona-specific campaign expenses, was not a "genuine" candidate "genuinely competing" with Appellee Donald John Trump.  The lower court took the unprecedented position that a "concrete" injury is one that is "genuine" and not "manufactured."

Two hours after the lower court published its opinion, Appellant filed his Notice of Appeal.

---

[6] *See* ECF 73.

6

## SUMMARY OF THE ARGUMENT

An Arizona ballot-placed Republican Presidential Candidate with substantive campaign activities evidenced by thousands of dollars in Arizona-specific campaign expenses has both a particularized and concrete competitive injury based on a diminution of votes.  It was a clear error for the lower court to conclude that a insignificant competitor is not a genuine competitor.  Appellant has Article III standing to challenge the eligibility of another candidate.

Because Appellant's motion was based on a First Circuit decision, it was neither frivolous nor made in bad faith.  Moreover, due to the expedited nature of the proceedings, there was no undue delay.  Lastly, because all parties were operating on the presumption that all facts were properly before the lower court, there would be no undue prejudice.  As such, the lower court abused its discretion in denying Appellant's motion to amend.

The case must be remanded back to the district court for a determination of whether Appellant has stated a claim upon which relief may be granted.

## STANDARD OF REVIEW

This Honorable Court reviews "legal conclusions on standing *de novo*, and the findings of fact related to this conclusion for clear error."[7]

---

[7] *U.S. v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005), amended on denial of reh'g, 437 F.3d 854 (9th Cir. 2006) (citing *United States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir.1999)).

**ARGUMENT**

## I. THE RULING WAS BASED ON AN UNPRECEDENTED THEORY FOR DISGREARDING A PARTICULARIZED AND CONCRETE INJURY

The lower court's Order to Dismiss relied entirely on two cases: *Clapper v. Amnesty International* [8] from the U.S. Supreme Court and *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest* [9] from the 9th Circuit for the unprecedented and novel legal theory that an individual who is a ballot-placed candidate actively competing against another candidate on principle does not have standing to challenge that person's constitutional eligibility because competing on principle is not "genuine" competition but rather improper manufacturing of standing that should be disregarded by the federal judiciary. [10]

While lower courts are free to invent new doctrines, as Appellant will delineate herein, neither *Clapper* nor *La Asociacion* support the lower court's unprecedented and novel legal theory to ignore Appellant's clearly established

---

[8] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).

[9] *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010).

[10] Based upon this logic, a civil rights activist in the 1950s would not have had standing for choosing to voluntarily sit in a "whites only" restaurant since he knew he would be injured as a result. He entered the restaurant not to eat, but to be forcibly removed and charged with criminal trespass in order to manufacture standing. This the logic the Court's Order relies upon.  This is the danger this Court will create by adopting this flawed reasoning.

injury, obvious traceability, and unquestionable redressability.  As such, the new legal doctrine manufactured by the lower court is unprecedented.

THE 9TH CIRCUIT <i>LA ASOCIACION</i> CASE

This Circuit's decision in *La Asociacion* explained that an "organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources and a frustration of its mission.  It cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.  It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."[11]

This Circuit's decision in *La Asociacion* was absolutely correct.  First, to establish associational standing, an organization needs to show either diversion of resources or frustration of its mission; both of which would "affect" the organization. The organization could not show any frustration to its mission, so it cited the litigation costs the organization incurred to prove "diversion of resources."  This Circuit explained that the resources being diverted cannot simply be the litigation costs to pursue a claim that did not affect the organization.  In other words, this Circuit held that the source of an organization's injury cannot be the cost of accessing the court to argue it has an injury since that would be akin to the logical

---

[11] *La Asociacion*, 624 F.3d at 1088.

fallacy of circle reasoning (*i.e.*, "I have an injury because it cost me money to tell the court I have an injury.").

The lower court improperly analogized *La Asociacion* to this case solely for the proposition that Appellant John Anthony Castro, an individual (not an organization), is "manufacturing" standing with campaign expenses and ballot placement.  This analogy is without merit.

First, the lower court improperly analogized a specialized analysis for associational standing with regular individual standing; apples and oranges.  Second, the lower court improperly analogized litigation costs with campaign expenses while missing the entire rationale behind this Circuit's ruling in *La Asociacion*.  Third, the lower court improperly expanded on this Circuit's use of the term "manufacture" to give itself the power to deny standing to anyone the lower court deems not to be "genuine."  These three factors stretch the logic of the *La Asociacion* decision far beyond the limits of logic.

*La Asociacion* stood for the proposition that, in order to establish associational standing, an organization cannot rely on costs associated with complaining about the issue.  As such, *La Asociacion* could be cited to disregard the costs associated with Appellant John Anthony Castro's multistate litigation strategy against Appellee Donald John Trump, but Appellant John Anthony Castro has never cited these expenses as the basis for his standing.

THE SUPREME COURT'S *CLAPPER* CASE

In *Clapper v. Amnesty International*, an organization determined that the language of the Foreign Intelligence Surveillance Act could theoretically permit the government to surveil its organizational communications with non-U.S. persons and, on that basis, sued the government to seek a determination that the provision was unconstitutional.[12]   In support of their injury argument to establish standing, the organization cited increased technology costs "to protect the confidentiality of their international communications; in their view, the costs they have incurred constitute present injury that is fairly traceable to" the challenged law.[13]   In other words, the organization had a fear that the government could *possibly* interpret a law to surveil their communications, so they decided to incur added technology costs to secure their communications against that *theoretical* risk.   The added technology costs against the theoretical risk was the "injury" they were claiming to justify Article III standing.

The U.S. Supreme Court held "that respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending and because they cannot manufacture standing by incurring costs in anticipation of non-imminent harm."[14]   In other words, *Clapper v. Amnesty*

---

[12] *See* 568 U.S. 398 (2013).
[13] *Id*. at 407.
[14] 568 U.S. 398, 422 (2013).

*International* was about the realistic likelihood of a future harm.  In *Clapper*, the fear of injury was theoretical and conjectural.

The lower court improperly analogized *Clapper v. Amnesty International* to this case by again exploiting the use of the term "manufacture" to support its unprecedented and novel theory that Appellant John Anthony Castro is not a "genuine" competitor despite the fact that that's not what *Clapper* held.

More importantly, the lower court got lost in the analysis of whether a person is a "genuine" competitor instead of focusing on whether there would be a diminution of votes, which is the source of the injury.  Because basic logic and mathematics dictates there would be a diminution of votes, the lower court knew the only way to deny relief was to itself "manufacture" a new legal theory to disregard Appellant John Anthony Castro's indisputable competitive injury.

<u>THE TRIFLE IS THE INJURY AND THE PRINCIPLE SUPPLIES THE MOTIVATION</u>

The lower court's order is fundamentally flawed and improperly relies on a thinly veiled exploitation of the term "manufacture" taken well out of context in order to justify the unprecedented and novel theory that a lower court can disregard an individual's injury if it determines the injury, although particularized, is not

13

"genuine."[15]  In essence, the lower court considers the term "concrete" to include "genuine."  This improperly adds a new requirement without precedential support.

Appellant John Anthony Castro explained in his proposed amended complaint that the initial motivation for pursuing the Republican Nomination for the Presidency of the United States was the principle that no person who engaged in, provided aid to, or provided comfort to an insurrection should serve as Commander-in-Chief of the United States Armed Forces.  That motivating principle led Appellant on this journey, and Appellant is now doing his best, entirely on his own, to seriously pursue the Presidency of the United States.  The lower court has chosen to scoff at Appellant's efforts despite the U.S. Supreme Court clearly ruling that "an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."[16]

The lower court has inappropriately made the federal judiciary the arbiter of who is and is not a "genuine" candidate with no judicially manageable standards, which possibly violates the Political Question Doctrine.  In a broader sense, the lower court's decision would permit lower courts to disregard a concrete and particularized injury on the basis that the litigant voluntarily chose to incur the injury

---

[15] "The Court already has considered this information and concluded that it does not establish a genuine, concrete competitive injury. Accordingly, Castro's motion for leave to amend will be denied." Castro v. Fontes, No. CV-23-01865-PHX-DLR (D. Ariz. decided Dec. 5, 2023).
[16] *U.S. v. SCRAP*, 412 U.S. 669, 690 (1973).

on principle, which would threaten the standing of those that engage in civil disobedience to unjust laws.  It is a disastrous ruling with far-reaching implications well beyond that of this case.

As the U.S. Supreme Court has explained, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."[17]

The U.S. Court of Appeals for the 9th Circuit has elaborated that a denial of a motion to amend a complaint is proper only when the amendment would be clearly frivolous, unduly prejudicial, cause undue delay, or is being made in bad faith.[18]

In this case, the motion was not frivolous.  Although the existing jurisprudence in the 1st Circuit clearly and indisputably did not support the application of the "time of filing" rule, the 1st Circuit incorrectly applied it despite the evidentiary record clearly contradicting their factual claims that Appellant's campaign activities were "nonexistent."  As such, Appellant's concerns were not unfounded since one circuit was already convinced it could apply the *Time of Filing Rule* leaving Appellant with no guaranteed recourse for review other than the filing of a *Petition for Panel Rehearing* and a *Writ of Certiorari*; neither of which the courts are required to consider.  Moreover, the doctrine of *res judicata* could possibly apply to effectively

---

[17] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[18] *See United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398 (9th Cir. 1990)

deny any consideration of a new case although that theory is currently being tested in New Hampshire because Plaintiff re-filed his case there on Friday, December 1, 2023, to put *res judicata* to the test.

In this case, the motion would not have been unduly prejudicial.  The 9th Circuit has held that in absence of prejudice to opposing parties, leave to amend should be freely given.[19]  The amendment in this case only intended to capture the facts that all parties were already aware of and had fully brief on the presumption they were properly and fully before the lower court for its consideration.   Appellee Donald John Trump had not argued for the application of the *Time of Filing Rule*.  In fact, the 1st Circuit *sua sponte* applied it in the New Hampshire appeal.  As such, the motion would not have prejudiced Appellee Donald John Trump.  In fact, even if Appellee Donald John Trump had argued for the application of the *Time of Filing Rule*, leave to amend should still have been granted since it failing to grant it would have only delayed a substantive ruling on the merits due to a technical procedural rule against a *pro se* litigant, which raises due process concerns.  Moreover, because Appellee Donald John Trump had briefed all legal issues and the

---

[19] *See Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979); *Howey v. U.S.*, 481 F.2d 1187 (9th Cir. 1973).  Other circuits agree as well.  *See Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir. 1968); *Kerrigan's Est. v. Joseph E. Seagram & Sons*, 199 F.2d 694 (3d Cir. 1952); *Int'l Harvester Credit Corp. v. E. Coast Truck*, 547 F.2d 888 (5th Cir. 1977).

amendment would only formally added facts already considered by all parties, the lower court would have even been permitted to deny any new motions to dismiss since there were no new legal claims or facts not previously considered by the parties.

In this case, granting the motion also would not have resulted in undue delay. To the contrary, denying the motion is what has resulted in undue delay. The 9th Circuit has held that waiting 24 months is not, in and of itself, an undue delay,[20] so 3 months, as in this case, is hardly undue. However, the 9th Circuit has held that waiting 36 months and amending to allege a ***new claim*** does constitute undue delay.[21]

Based on all of the foregoing, there was no basis to deny the motion for leave to amend unless this Circuit determines it was unnecessary due to the inapplicability of the *Time of Filing Rule*.

---

[20] *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990).
[21] *See Ulloa v. Guam Econ. Dev. Auth*., 580 F.2d 952 (9th Cir. 1978) (adding a claim of fraud three years later on the eve of trial).

## II.   THE "TIME OF FILING RULE" DOES NOT APPLY

This Circuit has held that the cases considered by lower courts "should be limited to the facts and circumstances known at the time the suit was filed."[22]

Appellant's Verified Complaint, Paragraph 19, properly and sufficiently alleged direct and current competition with Appellee Donald John Trump prior to the September 5, 2023, filing of the Original Complaint.  Appellant provided more definitive statements that related-back to the verified factual allegations in the Original Complaint providing more precise examples of those overt acts of political competition, which included incurring campaign expenses attributable to the targeting of voters in the state of Arizona, Appellant's Presidential campaign website that incurred hundreds of dollars in website hosting fees, the launching of a show called "The Truth Addict" that required thousands of dollars in equipment and productions costs, and cultivating a substantial and active following on multiple social media platforms that includes thousands of voters in Arizona, which Appellant made the lower court aware of in his November 1, 2023, affidavit.[23]

Because the Original Complaint sufficiently alleged the fact that he was competing and Appellant later provided examples of his overt acts of political competition, the Time of Filing Rule does not apply.

---

[22] *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008).
[23] *See* ECF 53.

Moreover, the U.S. Supreme Court held in *Golden v. Zwickler*[24] that it is permissible for courts to determine the likelihood that a party will follow through with a stated intent, which has been recognized by this Circuit in *McCollester v. City of Keene.*[25]   In this case, there was no need to make that determination since Appellant followed through prior to the Court rendering judgment.  Hence, applying the time-of-filing rule would evidence of stated intent due to a deferred timeframe followed by the act actually being done.

## III.    IRREPARABLE HARM WILL RESULT IF APPELLATE REVIEW IS DELAYED

This Court's decision to deny expedited appellate review or, at the bare minimum, an adjusted expedited briefing schedule to be completed this month, effectively denies Appellant any appellate review and represents an egregious violation of the First Amendment right to petition an appellate court.

The Arizona Presidential Primary Election is scheduled to take place on March 19, 2024.  If Appellant's Opening Brief is not due until February 28, 2024, and response briefs not due until March 28, 2024, Appellant's case is guaranteed to be mooted, relief effectively denied, and First Amendment right to petition the appellate court to redress his grievance abridged.

---

[24] 394 U.S. 103 (1969).
[25] *See* 668 F.2d 617, 620 (1st Cir. 1982).

Appellee Arizona Secretary of State has communicated his intent to begin - printing state ballots as soon as possible; possibly with the intent of frustrating appellate review with a self-set deadline of December 11, 2023.  As such, time is of the essence.

If the ballots are printed, Appellee Arizona Secretary of State would have grounds to argue harm.

Further delay will risk the harm being irreparable if the state prints the ballots.[26]  This is why Appellant sought to amend his requested relief in the lower court to seek an injunction against Appellee Arizona Secretary of State from printing ballots with Appellee Donald John Trump's name, specific performance to print new ballots if ballots were already printed, and/or not counting votes (ballot or write-in) for Appellee Donald John Trump, which the lower court improperly denied.

## CONCLUSION

The judgment below should be vacated, and the case remanded for trial.

Respectfully submitted,

Dated: December 8, 2023.                    By: */s/ John Anthony Castro*

John Anthony Castro
12 Park Place

---

[26] Appellant also informed the lower court of his intent to seek permanent injunctive relief preventing Appellee Arizona Secretary of State from counting any votes (ballot or write-in) for Appellee Donald John Trump.

Mansfield, TX  76063
Tel. (202) 594 – 4344
J.Castro@JohnCastro.com

*Appellant Pro Se*

## STATEMENT OF RELATED PROCEEDINGS

1. *Castro v. Scanlan and Trump*, 1:23-cv-00416. (D. NH Sept. 5, 2023).

   Dismissed for lack of standing and political question doctrine.

2. *Castro v. Scanlan and Trump*, No. 23-1902 (1st Cir. decided Nov. 22, 2023).

   Dismissal upheld by application of the Time of Filing Rule to disregard

   more substantive after-filing competitive acts.

3. *Castro v. Scanlan and Trump II*, 1:23-cv-00531. (D. NH Dec. 4, 2023). Res

   judicata does not apply without a ruling on the merits, so all competitive acts

   to date must now be considered.

4. *Castro v. Aguilar and Trump*, 2:23-cv-01387 (D. NV Sept. 5, 2023).

   Complaint amended on October 8, 2023, to capture October 2, 2023, Nevada

   Declaration of Candidacy and substantive campaigning up to that date.

## CERTIFICATE OF COMPLIANCE

1.      I certify that this filing complies with the type-volume limitations of the Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by the Fed. R. App. P. 32(f), the Brief contains 4,002 words.

2.      I also certify that this filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


*/s/ John Anthony Castro*
John Anthony Castro

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, a true and accurate copy of the foregoing Appellant's Opening Brief with accompanying attachments (if any) was electronically filed.  It is further certified that all other parties are CM/ECF users and that service of this motion was made on Appellees via CM/ECF.


*/s/ John Anthony Castro*
John Anthony Castro