IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN ANTHONY CASTRO,

    Plaintiff,

v.                                            Case No. 1:23-CV-00766-MLG-GJF

SECRETARY OF STATE MAGGIE
TOULOUSE OLIVER and
DONALD JOHN TRUMP,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

*Pro se* Plaintiff John Anthony Castro[1] has initiated litigation in several states asserting that former President of the United States Defendant Donald J. Trump should be prohibited from seeking an additional term in office after the events leading up to the January 6, 2021, attack on the United States Capitol. Castro asserts that Section Three of the Fourteenth Amendment of the United States Constitution creates an implied cause of action for a political candidate to challenge another candidate's constitutional eligibility to hold office because that competitor engaged in or provided "aid or comfort" to an insurrection. Doc. 1 at 9; *see* U.S. Const. Amend. XIV § 3. Thus

---

[1] According to recent media reports, Castro has been arrested on charges for tax fraud. *See Mansfield Man Charged in Fraudulent Tax Return Scam*, U.S. Attorney's Office Northern District of Texas (Jan. 10, 2024) https://www.justice.gov/usao-ndtx/pr/mansfield-man-charged-fraudulent-tax-return-scam [https://perma.cc/5UM3-YAYK]. Some of these stories contain quotes from Castro indicating he believes that prosecution is retaliation for the various lawsuits he has filed seeking to exclude President Trump from state election ballots. *See, e.g.*, Nick Robertson, *Trump 14th Amendment political challenger arrested on federal tax charges*, The Hill (Jan. 10, 2024) https://thehill.com/regulation/court-battles/4400782-trump-14th-amendment-political-challenger-arrested-on-federal-tax-charges/; Jenna Russell et al., *Prolific Challenger of Trump's Ballot Eligibility Faces Federal Tax Charges*, The New York Times (Jan. 10, 2024) https://www.nytimes.com/2024/01/10/us/castro-trump-ballot-challenge-tax-fraud.html [https:// https://perma.cc/385D-JYRF].

1

far, Castro's efforts have not proven fruitful. District courts across the country have—without exception—dismissed nearly identical suits filed by Castro for lack of standing. *See Castro v. Fed. Election Comm'n*, Civil Action No.: 22-2176, 2022 WL 17976630, at *3 (D.D.C. Dec. 6, 2022), *aff'd*, No. 22-5323, 2023 WL 2899541 (D.C. Cir. Apr. 10, 2023); *Castro v. Trump*, Case No. 23-80015, 2023 WL 7093129, at *1 (S.D. Fla. June 26, 2023); *Castro v. N.H. Sec'y of State*, Civil No. 23-cv-416, 2023 WL 7110390, at *6 (D.N.H. Oct. 27, 2023), *aff'd sub nom. Castro v. Scanlan*, 86 F.4th 947, 949 (1st Cir. 2023); *Castro v. Amore*, C.A. No. 23-405, 2023 WL 8191835, at *1 (D.R.I. Nov. 27, 2023); *Castro v. Fontes*, No. CV-23-01865, 2023 WL 8436435, at *6 (D. Ariz. Dec. 5, 2023); *Castro v. Warner*, Case No. 2:23-cv-00598, 2023 WL 8853726, at *6 (S.D.W. Va. Dec. 21, 2023); *Castro v. Sec'y of State*, Case No. 2:23-cv-01387, 2024 WL 81388, at *2 (D. Nev. Jan. 8, 2024). Having carefully reviewed the parties' filings and after oral argument, this Court can discern no basis to depart with the reasoning and holdings in these other opinions. Accordingly, for the reasons explained below, this Court also dismisses Castro's complaint on standing grounds.[2]

---

[2] Recently, the Colorado State Supreme Court held that President Trump was ineligible to appear on the Colorado Republican presidential primary ballot. *Anderson v. Griswold*, No. 23SA300, 2023 WL 8770111, at *51 (Colo. Dec. 19, 2023). The movants in that case were a group of Republican and unaffiliated voters whose claims were brought in accordance with Colorado state statute. *Id.* at *2. The procedural posture of that case, and those presented in the instant matter, are quite different. Castro's challenge is predicated on standing as a political competitor (as opposed to concerned voters) and he identifies no statute that provides a viable cause of action for his challenge.

**PROCEDURAL BACKGROUND**[3]

On September 9, 2023, Castro first filed this suit to enjoin New Mexico Secretary of State Maggie Toulouse Oliver from accepting and processing President Trump's ballot access documents. Doc. 1 at 11. Shortly thereafter, Magistrate Judge Gregory J. Fouratt ordered Castro to show cause as to: (1) why the Court should exercise jurisdiction over his declaratory judgment requests; (2) his lack of compliance with Federal Rule of Civil Procedure 65(b)(1)(B) and (c) when noticing President Trump and Secretary Toulouse Oliver; (3) why the Court should not dismiss for lack of personal jurisdiction over President Trump; and (4) whether the Court has subject matter jurisdiction over his claims.[4] *See generally* Doc. 5 ("Order to Show Cause"). Before responding to the Order to Show Cause, on September 21, Castro filed an application for a temporary restraining order ("TRO") and an expedited preliminary injunction to enjoin Secretary Toulouse Oliver from accepting any ballot access paperwork that President Trump might submit. Doc. 9 at 1. Castro also requested the Court hold a hearing on the preliminary injunction and consolidate it with a trial on the merits under Rule 65(a)(2). *Id.* at 1-2. When Castro finally addressed the Order to Show Cause, he (1) withdrew his requests for declaratory relief; (2) conceded that a TRO was not needed; and (3) asserted President Trump was not a nominal defendant.[5] Doc. 26 at 1-2.

---

[3] The procedural history of this case is messy. President Trump has not complied with local rules and Castro has submitted a host of filings that are of little assistance in addressing the substance of this litigation. To create a comprehensible timeline for the reader, the Court has cabined its discussion to only those submissions that are germane to the question of standing.

[4] Castro subsequently filed objections to Judge Fouratt's Order to Show Cause. Doc. 12. The tenor and tone of that filing was wildly out-of-step with the decorum and collegiality typically exhibited by counsel in this district. The Court subsequently cautioned Castro regarding his inflammatory approach in litigating this case and directed him to address Judge Fouratt's order. Doc. 22 at 3.

[5] During the November 28, 2023, motion hearing Castro confirmed his requests for declaratory relief and a TRO were withdrawn. *See* Doc. 67 at 3:17-4:4. The Court indicated that it expected

However, Castro's response did not address the substantive questions pertaining to subject matter jurisdiction and personal jurisdiction. *See id.* at 1-2; Doc. 5 at 4-6.

President Trump subsequently filed a document titled "Memorandum in Support of Motion to Dismiss of Defendant Donald John Trump," Doc. 15 ("Original Motion to Dismiss"), and contemporaneously filed a separate request for leave to exceed the page limits on motions, but failed to state whether that request was opposed and to attach a proposed order—both of which are required by the local rules. *See* D.N.M.LR-Civ. 7.1, 7.2. Judge Fouratt denied this page extension request for failure to comply with local rules but permitted President Trump to re-file the motion. Doc. 18. Castro then filed two motions to strike the Original Motion to Dismiss, which challenge the motion on technical grounds. *See* Docs. 19, 20 (collectively "Motions to Strike").

In addition to the Motions to Strike, Castro submitted his Contingent Response in Opposition to Non-Existent Motion to Dismiss, Doc. 21, where he presented his take on the arguments raised in President Trump's Original Motion to Dismiss. Doc. 15.

President Trump subsequently filed his Amended Motion to Exceed Page Limit ("Amended Motion to Exceed"), Doc. 23, and he later filed his Amended Motion to Dismiss and Memorandum in Support ("Amended Motion to Dismiss"). Doc. 24. Castro did not file a response to the Amended Motion to Dismiss, choosing to maintain his procedural challenge to the validity of the Original Motion to Dismiss. *See, e.g.*, Doc. 28 (objections); Doc. 43 (supplemental authority).

The Court held a hearing on November 28, 2023, to address the pending motions. *See* Doc. 54 (clerk's minutes); Doc. 67 (transcript). Thereafter, on December 9, 2023, Castro filed a motion

---

Castro to memorialize his withdrawal of these requests, but Castro has yet to comply. *See id.* at 3:23-25.

4

for leave to amend his verified complaint, largely to add facts to support his standing as a purported political competitor. *See generally* Doc. 63.

## DISCUSSION

**I.  Castro's procedural challenges to President Trump's Original Motion to Dismiss are denied.**

Before considering the substance of Castro and President Trump's standing arguments, the Court first addresses (and rejects) Castro's technical challenge to President Trump's Original Motion to Dismiss. Castro asserts that the Court should deem that filing invalid because it is styled as a "memorandum"—as opposed to a motion—and should therefore be stricken.[6] Doc. 19 at 1; Doc. 20 at 1. The Court disagrees.

Federal Rule of Civil Procedure 7(b)(1) provides that a motion must (1) be in writing unless made orally, (2) "state with particularity the grounds for seeking the order," and (3) "state the relief sought." The Original Motion to Dismiss meets each of these requirements. The title of President Trump's Original Motion to Dismiss is merely a misnomer, and this Court's primary concern is the merits of the legal arguments presented.[7] Substance over form is preferred, and this Court is strongly inclined to resolve disputes on legal argument rather than technicalities. The Court

---

[6] Ordinarily, the Court would consider the Original Motion moot because it was superseded by the Amended Motion. *See. e.g.*, *Martinez v. Tharp*, No. CV 10-41 LH/GBW, 2011 WL 13289789, at *1 n.1 (D.N.M. Apr. 12, 2011) (noting that filing of an amended motion to dismiss rendered the previously-filed motion to dismiss moot); *Hernandez v. Perozynski*, No. 22-CV-205-MV-GJF, 2023 WL 2087975, at *1 (D.N.M. Feb. 16, 2023) (same). Yet, because Castro never filed a response to the Amended Motion to Dismiss, the Court considers his arguments in his contingent response to the Original Motion to Dismiss. Doc. 21.

[7] After Judge Fouratt granted President Trump's Amended Motion to Exceed, Doc. 27, Castro objected and requested a *de novo* review because Judge Fouratt granted extra pages to a "non-existent motion." Doc. 28 at 1. Castro's objection is mooted by the Court's decision that the Original Motion to Dismiss is a valid motion.

therefore denies Castro's request to strike President Trump's filing on technical grounds and will consider the merits of the parties' positions.[8]

## II. The Court lacks subject matter jurisdiction because Castro does not have Article III standing.

### A. Applicable legal standard

Under Article III of the United States Constitution, a plaintiff must have standing to bring their claims. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021); *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) ("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing."). The "irreducible constitutional minimum" for standing is comprised of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id*. at 560-61 (cleaned up). The plaintiff "bears the burden of establishing these elements," which, at the pleading stage, means the plaintiff must "allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). When considering the matter, this Court "must accept as true all material allegations of the complaint and must construe the

---

[8] In a footnote in the Original Motion, Trump argues that Castro's attempt at service was ineffective under Federal Rule of Civil Procedure 5 because Castro "merely mailed" the summons and complaint to Mar-a-Lago's "general address." Doc. 15 at 2 n.3; *see also* Doc. 30 at 2-3. Castro argues this defense was not properly raised and has been waived pursuant to Rule 12(g)(2). Doc. 21 at 2. At the hearing, the parties agreed that Trump did not properly raise the Rule 12(b)(5) service of process issues. For this reason, the Court does not address these arguments further. *See* Doc. 67 at 9:15-20, 10:19-21.

complaint in favor of the complaining party.'" *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

> **B.     Castro's allegations do not suffice to demonstrate political competitor standing nor an injury in fact.**

In an effort to establish a cognizable interest for purposes of Article III, Castro invokes the theory of "political competitor standing," Doc. 1 ¶ 2, 13 ¶ 21; *see* Doc. 21 at 3-5, which is the notion that "a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013) (quoting *Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011)). For a plaintiff to demonstrate injury as a political competitor, they must show that they "have a chance of prevailing in the election" because the underlying injury is the potential loss of the election. *Grinols v. Electoral Coll.*, No. 2:12-cv-02997, 2013 WL 2294885, at *8 (E.D. Cal. May 23, 2013) (quoting *Drake*, 664 F.3d at 782); *see, e.g.*, *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990); *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008). The likelihood of prevailing in an election need not be definite but must be more than a figurative pie in the sky—the plaintiff must "truly [be] in competition" with the purportedly ineligible candidate. *Liberty Legal Found. v. Nat'l Dem. Party of the USA, Inc.*, 875 F. Supp. 2d 791, 800-01 (W.D. Tenn. 2012).

Here, Castro asserts that he is a Federal Election Commission ("FEC") registered Republican primary presidential candidate and he intends to either appear on the primary ballot in New Mexico as such or be formally recognized as a write-in candidate. Doc. 1 at 8 ¶ 2, 12 ¶ 19, 13 ¶ 22. He affirms that he has been placed on the ballot as a Republican presidential primary candidate in New Hampshire, Nevada, and Arizona, Doc. 49 at 1 ¶ 2; intends to pay the fees to

appear on the ballots of Montana, West Virginia, and Kansas, *id.* at 2 ¶ 8, Doc. 31-1 at 2 ¶ 4; and his ballot placement is currently "is dispute" in South Carolina. Doc. 49 at 1 ¶ 3. Castro further explains that he has "incurred expenses associated with campaigning" in New Mexico, like canvassing homes in Albuquerque and Santa Fe. *Id.* at 2 ¶ 4. He describes how he has "digitally targeted voters" in the state by continuously incurring monthly hosting expenses for his presidential campaign website prior to the filing of his complaint, launching his own online show which has been supposedly viewed by thousands of New Mexico voters, cultivating a "genuine and active political following on social media," and being recognized by "every major news outlet as a write-in candidate" and ballot-placed one. *Id.* at 2 ¶¶ 5-7, 9; Doc. 31-1 at 1 ¶ 3, 2 ¶ 5. He also avers that he has received $677 in campaign contributions from small donors. Doc. 49 at 2. Moreover, he claims that "thousands of voters . . . have expressed that they would vote for [him] *only if* Trump" was not a candidate, Doc. 1 at 14 ¶ 25, including one named voter and resident of New Mexico and "dozens of other [University of New Mexico] classmates" who support his campaign. Doc. 49 at 2 ¶ 11.

But these efforts, even when viewed in totality, do not suffice to confer political competitor standing. Castro has put forth no allegations that suggest, even *prima facie*, he is genuinely competing with President Trump for votes or contributions, or that President Trump's inclusion on the ballot damages his chances of winning the nomination in New Mexico. Indeed, Castro is not accounted for in the national polls,[9] he has offered no concrete proof of campaign operations

---

[9] *See 2024 Presidential Election Polls*, Race to the WH, https://www.racetothewh.com/president/polls [perma.cc/L7QF-JNGH], (last visited Jan. 11, 2024) (collecting national polls); *Latest Polls*, FiveThirtyEight, https://projects.fivethirtyeight.com/polls/president-primary-r/2024/national/ [perma.cc/CH2R-XSLM] (last visited Jan. 11, 2024) (same); *Here are the 2024 Republican presidential candidates*, CNN (Jan. 5, 2024), https://www.cnn.com/election/2024/presidential-candidates [perma.cc/95DU-5KHL] (featuring candidates who appear in CNN's polls).

within the state or contributions from New Mexico voters, nor has he presented evidence proving the location of the supporters that have watched his online show or follow him on social media. Moreover, Castro has not committed to being a ballot-placed primary candidate or a write-in candidate. The facts as they existed at the time Castro filed his complaint, and as they exist now, show that Castro is neither truly "competing" with President Trump for the New Mexico Republican primary candidacy nor will he be concretely injured by President Trump's presence on the ballot.[10] *See Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008) ("Standing is assessed as of the time the action was commenced." (citing *Lujan*, 504 U.S. at 570 n.5)).

Castro further asserts that "a political competitive injury is implied when the individuals are competing for the same voters in the same contest regardless of what the contest is for," and it is "common sense" that he would receive more political support as a Republican candidate without President Trump in the race. Doc. 21 at 4-5. This argument is too speculative. "[T]he mere possibility of a potential unrealized injury, without more, does not confer standing." *McCombs v. Delta Grp. Elecs., Inc.*, Case No.: 1:22-cv-00662, 2023 WL 3934666, at *5 (D.N.M. June 9, 2023). Any lost votes and possible campaign contributions will depend on the actions of third parties in the hypothetical situation that President Trump were not a presidential candidate. The Court declines to "endorse standing theories that rest on speculation about the decisions of independent actors." *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 379 (W.D. Pa. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). And Castro's claimed

---

[10] Castro admits that his "candidacy is based on principle," Doc. 67 at 27:11-12, and he has previously acknowledged he "was going to run for the presidency of the United States to resolve [the] issue of Section Three of the Fourteenth [A]mendment." *Id*. at 27:7-10; *see N.H. Sec'y of State*, 2023 WL 7110390, at *5 ("[B]y his own admission, Castro declared as a candidate and paid the filing fee to show the impermissibility of Trump's presidency. . . . [O]ne of his goals in the campaign is to 'demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources, . . . and demonstrate executive leadership capabilities.'").

injuries are largely speculative and hypothetical—two things the Supreme Court has cautioned against as means to confer standing to a litigant. *See Lujan*, 504 U.S. at 560; *TransUnion*, 594 U.S. at 434-35.

While it is evident that Castro is motivated to challenge President Trump's qualifications as a candidate for office, "a plaintiff cannot establish [political competitor] standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public." *Carney v. Adams*, 592 U.S. 53, 59 (2020) (internal citation and quotations omitted). A "political competitor," in this context, is someone who possesses "the requisite personal interest in the determination of the constitutionality of a rival candidate's eligibility for office in consequence of a concrete, particularized injury in fact over and above the abstract generalized grievance suffered by all citizens." *Castro v. Scanlan*, 86 F.4th 947, 956 (1st Cir. 2023) (cleaned up); *see Raines v. Byrd*, 521 U.S. 811, 819 (1997) (an "alleged injury suffered [must be] particularized as to" the plaintiff) Castro does not meet this standard. Castro is not genuinely competing with President Trump for the Republican party presidential nomination and he will not suffer an injury-in-fact (as a political competitor) if Trump is included on the New Mexico primary ballot.[11] Accordingly, President Trump's two motions to dismiss will be granted based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).[12]

---

[11] Because Castro has not shown a concrete and particularized injury, the Court need not address the traceability and redressability elements of standing.

[12] Since the Court will not consider Castro's substantive arguments concerning the application of Section Three of the Fourteenth Amendment, Castro's "Motion to Take Notice of Adjudicative Facts from Colorado State District Court" is moot. Doc. 45.

### III.   Castro's proposed amendment to his complaint is futile.

In an effort to substantiate his claims for political competitor standing, Castro moves for leave to amend his complaint to include more facts to support his candidacy. *See* Doc. 63. President Trump opposes Castro's proposed amendment by arguing that it is futile—because the amended facts do not satisfy the requirements of standing—and brought in bad faith—because Castro is manufacturing standing in a way unsupported by law. Doc. 65 at 1-2.

Federal Rule of Civil Procedure 15(a) provides that leave to amend is within the discretion of the district court. *See Bradley v. Val-Mejias*, 379 F.3d 892, 900 (10th Cir. 2004). A "district court should refuse leave to amend 'only [upon] showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (alteration in original and citation omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). The additional facts Castro seeks to formally include in the proposed complaint are still insufficient to confer standing.

Castro points to the following facts to support his standing as a political competitor: the monthly hosting fees for his campaign website, the number of social media followers he has on X (formerly known as Twitter), international and national news media coverage, presence on Republican primary ballots in three states, collection of campaign contributions, and canvassing neighborhoods in Albuquerque and Santa Fe. Doc. 63-1 ¶¶ 14-21; *see* Doc. 63 at 2-3. These proposed factual amendments are an attempt to officially incorporate all the supplementary evidentiary material he has submitted for the Court's consideration since the beginning of November 2023. *Compare* Doc. 31-1 *and* Doc. 49, *with* Doc. 63-1; *see Fontes*, 2023 WL 8436435,

11

at *6 ("Castro's proposed amended verified complaint does little more than formally incorporate into the body of the pleading all the evidentiary material he has previously submitted to the Court . . ."). Even considering these additional factual contentions, Castro has not identified a concrete or particularized harm. As such, the Court concludes Castro's proposed amended complaint is futile. The Court therefore will deny Castro's motion to amend his complaint. Doc. 63.

## CONCLUSION

Having reviewed the parties' submissions and the applicable law, and having held a hearing on November 28, 2023, the Court grants in part President Trump's two motions to dismiss. Docs. 15, 24. As it stands, Castro's claims of political support in New Mexico are too speculative and conjectural to merit granting him political competitor standing or finding an injury-in-fact. Castro is not in true competition with President Trump for votes or financial contributions. This conclusion withstands the new factual allegations contained in Castro's proposed amended complaint. Doc. 63-1. For these reasons, the Court lacks subject matter jurisdiction over Castro's complaint against President Trump and orders the following:

1. Castro's "Emergency Application for a Temporary Restraining Order" is withdrawn. Doc. 9.

2. Castro's Motions to Strike are denied. Docs. 19, 21.

3. President Trump's Original Motion to Dismiss and Amended Motion to Dismiss are granted in part. Docs. 15, 24.

4. Castro's Objection to Magistrate Order and Motion for *de novo* Review is moot. Doc. 28.

5. Castro's "Verified Motion for Judgment on the Pleadings" is withdrawn. Doc. 29. *See* Doc. 67 (transcript) at 36:25-37:1-9.

6. Castro's "Motion to Take Notice of Adjudicative Facts" is moot. Doc. 45.

7. Castro's Motion for Leave to Amend Complaint is denied as futile. Doc. 63.

This case is dismissed without prejudice for lack of subject matter jurisdiction. All other pending motions, such as Castro's Motion for Issuance of Summons, Doc. 60, and his Motion for Ruling and Notice of Intent to File Writ of Mandamus, Doc. 66, are terminated as moot.

Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately disposing of this case.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA